UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:18-CV-00129-JHM

DONALD E. PAWLEY                                                 PLAINTIFF

V.

BEL BRANDS USA, INC.                                        DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. [DN 20]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court holds that Defendant's Motion is **GRANTED**.

### I. BACKGROUND

In April 2005, Plaintiff Donald E. Pawley was employed by Defendant Bel Brands USA, Inc. [DN 23-1 at 1]. Mr. Pawley was forty-nine years old at the time. [*Id.*]. He was hired to work at Bel Brands' facility in Leitchfield, Kentucky where it manufactures cheese. [*Id.*]. Around 2009, Mr. Pawley was diagnosed with high blood pressure. [*Id.* at 13]. In June 2009, Mr. Pawley became a Warehouse Operator. [*Id.* at 1]. He held this position until he was terminated in May 2016. [*Id.* at 1, 11].

In August 2013, Rod Inman became Mr. Pawley's supervisor. [*Id.* at 2]. Mr. Pawley alleges that on at least three occasions he reported unsafe working conditions to his supervisors, including Mr. Inman. [DN 1 ¶¶ 18–21]. Mr. Pawley also alleges that Mr. Inman was "verbally abusive" and would make comments about his age or high blood pressure. [DN 23-1 at 15]. Mr. Pawley never reported the comments to anyone in management or human resources. [*Id.* at 15–16]. Nor did Mr. Pawley ever make any complaints that he believed that he was being discriminated against or harassed by Mr. Inman. [*Id.*].

When Mr. Pawley was hired, he received and reviewed Bel Brands' Employee Handbook. [*Id.* at 2]. It describes the progressive disciplinary system which includes four levels: Level 1 (Verbal Warning), Level 2 (Written Warning), Level 3 (Final Written Warning and/or three-day suspension), and Level 4 (Termination). [*Id.* at 3–4]. It also explains that all warnings issued remain in effect for one calendar year from the date of issue. [*Id.* at 4]. Mr. Pawley received infractions in July 2005, September 2006, and October 2012. [*Id.*] But it was the four infractions that Mr. Pawley received in his last six months of employment that led to his termination. [*Id.* at 10].

In December 2015, Mr. Inman gave Mr. Pawley a verbal warning because he was not pulling enough product. [*Id.* at 7]. In mid-April 2016, Mr. Pawley received a written warning for failing to place pulled supplies into the staging area. [*Id.* at 7–8]. In May 2016, Mr. Pawley received a three-day suspension related to a missing cage bolt on his forklift. [*Id.* at 8]. After his suspension, Mr. Pawley had a fourth performance infraction when he pulled whey powder out of order. [*Id.* at 9–11].

Supply Chain Manager Paul Myers decided to terminate Mr. Pawley in accordance with the terms of Bel Brands' progressive discipline policy because it was Mr. Pawley's fourth performance infraction during the previous twelve months. [*Id.* at 10]. When Mr. Myers informed Mr. Inman of his decision to terminate Mr. Pawley, it was Mr. Inman that asked that Mr. Pawley be given another chance. [*Id.* at 10–11]. However, Mr. Myers explained to Mr. Inman that the progressive discipline policy needed to be followed and instructed Mr. Inman to deliver the termination decision to Mr. Pawley. [*Id.*]. When Mr. Pawley was terminated he was sixty years old. [*Id.* at 16]. Since June 2016, Mr. Pawley has been working for Otis Bryant as a truck driver. [*Id.* at 14].

Mr. Pawley filed suit against Bel Brands in July 2018, in Grayson County Circuit Court alleging (1) wrongful discharge; (2) disability discrimination; and (3) age discrimination. [DN 1-3]. Bel Brands removed the case to the United States District Court for the Western District of Kentucky, Owensboro Division based on diversity jurisdiction. [DN 1]. Bel Brands now moves for summary judgment. [DN 20].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

Mr. Pawley raises wrongful discharge, disability discrimination, age discrimination, and hostile work environment claims.[1] [DN 1]. The Court will discuss each claim in turn.

**A. Wrongful Discharge Claim**

Mr. Pawley's Complaint alleges Bel Brands wrongfully terminated him in violation of the well-defined public policies of the Kentucky Occupational Safety and Health Act ("KOSHA") in KRS § 338.121. [DN 1 ¶¶ 55–70; DN 23 at 3]. Bel Brands argues that KOSHA preempts Mr. Pawley's wrongful discharge claim. [DN 20 at 14].

Employment relations in Kentucky are at-will, which means that an employer may discharge an at-will employee for any cause, or even no cause. *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 570 (Ky. Ct. App. 2005). An employee can pursue a wrongful discharge claim only if he or she was discharged "contrary to a fundamental and well-defined public policy as evidenced by existing law." *Id.* (citation omitted). However, this rule has an exception. An employee can only pursue a wrongful discharge claim "when the statute creating the public policy exception does not provide a structure for pursuing a claim." *Id.* (citation omitted). KRS § 338.121 "provides both the public policy exception and provides the remedy for its violation." *Id.* at 571.

KOSHA's purpose is to protect workers from dangerous conditions in the workplace. KRS § 338.011. To that end, any employee who believes that an employer is violating work and safety health standards may request an inspection. KRS § 338.121(1). An employee can request an inspection by giving notice to the Commissioner of the Department of Workplace Standards. *Id.*; KRS § 338.015(7). KRS §338.121(3) also prohibits retaliation. If an employee believes that he

---

[1] Hostile work environment is not specifically alleged in the complaint [DN 1], but the Court will consider the claim because both parties addressed it in in their briefs.

4

or she has been wrongfully discharged, he or she may file a complaint with the Commissioner within a reasonable time. *Id.*

In *Main v. Rio Tinto Alcan Inc.*, No. 4:12CV-00110, 2016 WL 698163, at *8 (W.D. Ky. Feb. 19, 2016), the plaintiff alleged that he was discharged in violation of KRS § 338.011 for reporting safety concerns to his employer. The Court held that the plaintiff could not "seek relief for wrongful termination because the statutes which create the public policy on which he relies specify the civil remedy for a violation." *Id.*; *see Smith v. Caterpillar, Inc.*, 304 F. App'x. 391, 394 (6th Cir. 2008) (holding that the plaintiff could not state a claim for wrongful discharge because both the Occupational Safety and Health Act ("OSHA") and KOSHA preempt wrongful discharge claims); *see also Street v. U.S. Corrugated, Inc.*, No. 1:08-cv-00153, 2011 WL 1456842, at *3 (W.D. Ky. Apr. 15, 2011) (holding that the plaintiffs' wrongful discharge claim based on OSHA was preempted); *see also Benningfield*, 183 S.W.3d at 571 (holding that a plaintiff's wrongful discharge claim under KRS § 338.121 was preempted).

Here, Mr. Pawley alleges that he was wrongfully discharged in violation of KRS § 338.121 because he reported safety violations to Bel Brands.[2] [DN 23 at 3–4]. But Mr. Pawley cannot seek relief for wrongful termination because KRS § 338.121 specifies a civil remedy for a violation of the statute. Consequently, Bel Brands is entitled to summary judgment because Mr. Pawley's wrongful termination claim is preempted.

**B. Disability Discrimination Claim**

Mr. Pawley alleges that Bel Brands discriminated against him because of his disability. [DN 1 ¶¶ 47–54]. Bel Brands argues, among other things, that Mr. Pawley is not disabled as defined in the Kentucky Civil Rights Act ("KCRA"). [DN 20 at 16-20].

---

[2] Mr. Pawley never reported any safety violations to the Kentucky Department of Workplace Standards or any other government agency. [DN 23-1 at 17].

5

The KCRA makes it unlawful for an employer to hire or fire an individual because of their disability. KRS § 344.040(1)(a). The KCRA is interpreted consistently with the Americans with Disabilities Act ("ADA"). *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003). Since the KCRA protects the disabled, the threshold question is whether Mr. Pawley is disabled as defined in the KCRA. The KCRA defines disability as: (1) having a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) having a record of such an impairment; or (3) being regarded as having such an impairment. KRS § 344.010(4). Neither party argues whether Mr. Pawley's high blood pressure is a physical impairment, so the Court will assume that his high blood pressure is a physical impairment. *See e.g., Williams v. Stark Cnty. Bd. of Cnty. Com'rs*, 7 F. App'x 441, 446 (6th Cir. 2001) (finding that courts have recognized that high blood pressure can be an impairment).

### 1. Physical or Mental Impairment that Substantially Limits One or More Major Life Activities

Mr. Pawley must have (1) an impairment that substantially limits (2) a major life activity. *See Baer*, 127 S.W.3d at 592 ("[H]aving an impairment does not alone make one disabled for purposes of the Act. An individual claimant must also prove that the impairment limits a major life activity and this limitation must be substantial.") (internal quotation marks omitted). "Whether the plaintiff has an impairment and whether the conduct affected by the impairment is a major life activity under the statute are legal questions." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 707 (Ky. Ct. App. 2004). "The ultimate determination of whether the impairment substantially limits the major life activity generally is a factual issue for the jury, but it may be resolved upon summary judgment under the appropriate circumstances." *Id.*

"Major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Baer*, 127 S.W.3d at 592. Mr. Pawley has not specifically identified which major life activities are impacted by his high blood pressure. The Court will assume that the major life activity that Mr. Pawley is referring to is working.[3] When working is the major life activity impacted, "a plaintiff must also show that his impairment significantly restricts his ability to perform either a class of jobs or a broad range of jobs . . . ." *Hallahan*, 138 S.W.3d at 708 (citation omitted). "A plaintiff's post-impairment work history may be relevant." *Id.* at 709 (citation omitted).

Here, Mr. Pawley does not have any work restrictions from his doctor because of his high blood pressure. [DN 23-1 at 13]. Except for periodic doctor's appointments, Mr. Pawley did not have to take time off work because of his high blood pressure. [*Id.* at 14]. When Mr. Pawley was diagnosed with high blood pressure, he never requested any accommodation from Bel Brands. [*Id.* at 13]. Mr. Pawley testified that while employed at Bel Brands he did not believe his high blood pressure ever prevented him from accomplishing any of his work tasks nor did it affect his ability to do his job. [*Id.*]. Although Mr. Pawley testified that he sometimes can get dizzy or blurred vision, he also admits that it does not prevent him from completing his work. [*Id.*]. Mr. Pawley has been employed as a truck driver at Otis Bryant since June 2016 and his high blood pressure has not prevented him from being employed there. [*Id.* at 14].

Mr. Pawley also argues that taking medication for a disability "does not render the individual cured of their disability." [DN 23 at 6]. That may be true, but the Court also considers "the ameliorative effects of medication" in its analysis. *Rose v. United Parcel Service, Inc.*, No. 5:17-cv-378, 2019 WL 1370849, at *14 n.18 (E.D. Ky. Mar. 26, 2019). Mr. Pawley says that with

---

[3] To the extent that Mr. Pawley suggests that his high blood pressure impacts walking as a major life activity, Mr. Pawley does not provide evidence that his high blood pressure *substantially* limits his walking. [DN 23 at 6].

7

his medication for his high blood pressure he can get through his day "pretty well." [DN 23-1 at 14]. To Mr. Pawley's knowledge, his medication is effective at managing his high blood pressure. [*Id.*]. Even when he feels that his blood pressure is "spiked" while on medication, there is no evidence to show that Mr. Pawley is restricted from a class of jobs or a broad class of jobs. [DN 20-4 Pl. 114:12–16]. Viewed in the light most favorable to Mr. Pawley, his high blood pressure does not substantially limit the major life activity of working.

### 2. Record of Such an Impairment

Mr. Pawley argues that he meets the record of impairment prong "as show in his medical records." [DN 23 at 6]. Unfortunately for Mr. Pawley, that is not how a plaintiff proves the record of impairment prong. "A record of impairment means an individual has 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Laferty v. United Parcel Service, Inc.*, 186 F. Supp. 3d 702, 710 (W.D. Ky. 2016) (citing *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002)). To succeed under this prong, a plaintiff "must show that he has 'a record of an impairment that would substantially limit one or more of [his] major life activities.'" *Id.* (quoting *Hilburn v. Murata Elecs. N.A., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999)). Claims under the record of impairment prong of KRS § 344.010(4)(b) "would appear to succeed or fail for many of the same reasons under KRS § 344.010(4)(a) (based on actual impairment), 'because both require a predicate showing of mental or physical impairment that substantially limits one or more major life activities.'" *Id.* (citing *Edwards v. Ford Motor Co.*, 218 F. Supp. 846, 851 (W.D. Ky. 2002).

Mr. Pawley cannot prove that he has a record of impairment. The Court has already determined that Mr. Pawley has no disability under KRS § 344.010(4)(a) because his high blood

pressure does not substantially limit the major life activity of working. For those same reasons, the record of impairment prong is unavailing to Mr. Pawley too.

### 3. Being Regarded as Having Such an Impairment

To succeed on the regarded as disabled prong, a "plaintiff must 'demonstrate that an employer thought he was disabled, [. . . and] that the employer thought that his disability would prevent him from performing a broad class of jobs." *Baer*, 127 S.W.3d at 594 (quoting *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001)).

Bel Brands did not perceive or misperceive that Mr. Pawley would not be able to perform a broad class of jobs. Mr. Pawley testified that no one at Bel Brands ever indicated to him that they thought his high blood pressure would prevent him from being able to perform his job. [DN 23-1 at 13].

Mr. Pawley argues that Bel Brands did regard him as having an impairment because of comments that Mr. Inman made such as "you'll stroke out on me," "you're an old man," and "you're getting feeble." [DN 23 at 7]. These comments do not show that Bel Brands viewed Mr. Pawley's high blood pressure as preventing him from performing a broad class of jobs. Other than Mr. Inman, no one else at Bel Brands ever commented to Mr. Pawley about his health. [DN 23-1 at 15]. Mr. Inman's comments may be offensive, but no reasonable jury could conclude that Bel Brands regarded Mr. Pawley as precluded from a broad class of jobs.

Mr. Pawley is not disabled under the KCRA because his high blood pressure does not substantially limit a major life activity, there is not a record of his impairment, and he is not regarded as having an impairment. Bel Brands is entitled to summary judgment on Mr. Pawley's disability discrimination claim.

### C. Age Discrimination Claim

Under the KCRA, it is unlawful to discriminate against individuals age forty and over in employment decisions such as hiring and firing. KRS § 344.040(1)(a). "Claims brought under the KCRA are 'analyzed in the same manner'" as claims under the Age Discrimination in Employment Act ("ADEA"). *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008) (quoting *Williams v. Tyco Elec. Corp.*, 161 F. App'x 529, 531, n.3 (6th Cir. 2006)); *see also Williams v. Wal-Mart Stores Inc.*, 184 S.W.3d 492, 495 (Ky. 2005). In age discrimination cases, a plaintiff may prove his claim through direct or circumstantial evidence. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003); *see also Williams*, 184 S.W.3d at 495. Mr. Pawley relies on circumstantial evidence. [DN 23 at 12].

The *McDonnell Douglas* burden-shifting framework guides the analysis of age discrimination claims based upon circumstantial evidence.[4] *Wexler*, 317 F.3d at 574. A plaintiff must first establish a prima facie case of age discrimination. *Id.* If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* If the defendant satisfies its burden, the plaintiff must show that the defendant's reason is pretext. *Id.*

#### 1. Prima Facie Case of Age Discrimination.

To establish a prima facie case of age discrimination, Mr. Pawley must show that: (1) he was over forty years old; (2) he suffered an adverse employment action; (3) he was qualified for

---

[4] In a disparate-treatment claim, as here, under the plain language of the ADEA "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). In *Gross*, the Supreme Court specifically declined to decide "whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 762 (1973), utilized in Title VII cases is appropriate in the ADEA context." 557 U.S. at 175, n.2. However, the Sixth Circuit has addressed the issue after *Gross* and clearly stated "while recognizing the differences between Title VII and the ADEA, we have long found the *McDonnell Douglas* framework useful in analyzing circumstantial evidence of ADEA claims . . . . The *McDonnell Douglas* test thus remains applicable law in this circuit. . .and we are without authority to overrule prior published decisions of our court absent an inconsistent decision of the Supreme Court or an *en banc* reversal." *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

the position he held; and (4) he was either replaced by a person outside the protected class or treated differently than similarly-situated individuals. *Smith v. Wrigley Mfg. Co. LLC*, 749 F. App'x 446, 448 (6th Cir. 2018). "In age-discrimination cases, the fourth element 'is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person.'" *Stearman v. Ferro Coals, Inc.*, No. 3:15-cv-31-DJH-DW, 2017 WL 5798781, at *3 (W.D. Ky. Nov. 28, 2017) (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003)). "'Age differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement for the fourth part of [an] age discrimination prima facie case.'" *Id.*

Bel Brands concedes the first two requirements of the prima facie case, but argues that Mr. Pawley cannot establish the third or fourth elements. *Id.* As to the third element, Bel Brands argues that Mr. Pawley's performance failings during the last six months of his employment proves that he was not qualified for his position. [DN 20 at 22]. The Sixth Circuit has held that when analyzing the prima facie case, a court cannot "consider the employer's alleged nondiscriminatory reason for taking an adverse employment action" because this "would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext . . . ." *Wexler*, 317 F.3d at 564 (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2000)). "At the prima facie stage, a court should focus on plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Id.* at 575. "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field . . . ." *Id.* at 575–76. "[T]he inquiry

11

should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.

Mr. Pawley's alleged performance failings during the last six months of his employment are Bel Brands' alleged nondiscriminatory reason for terminating Mr. Pawley, so the Court cannot consider them in determining if Mr. Pawley was qualified for the position. [DN 20 at 22]. Mr. Pawley has experience as a truck driver, machine operator, and fork lift operator. [DN 20-4 Pl. 14:4–18:18]. He has also held several positions within Bel Brands. [DN 20-4 Pl. 19:3–28:21]. Mr. Pawley has also received passing performance reviews at Bel Brands [DN 23-1 at 6–7]. Viewed in the light most favorable to the plaintiff, Mr. Pawley was qualified for his position.

As to the fourth element, Bel Brands also argues there is no evidence that it treated similarly-situated, non-protected employees more favorably. [DN 20 at 22]. In the disciplinary context of employment discrimination, the plaintiff and the comparator must have engaged in acts of "*comparable seriousness*." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (citation omitted and internal quotation marks omitted). In determining if the acts are of "comparable seriousness," the Court may look to factors "such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citation and internal quotation marks omitted). But "when such factors are not relevant, we need not consider them. Rather, to determine whether two individuals are similarly situated with regard to discipline, we make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee." *Id.* (citation and internal quotation marks omitted).

Mr. Pawley argues here that he was treated differently than other employees when he was written up in a group or when similarly-situated employees who also committed the same alleged offense were not written up. [DN 23 at 14]. But Mr. Pawley offers no evidence of the disciplinary history of those individuals or other evidence to show that they are similarly-situated, non-protected individuals. Mr. Pawley is also not aware of any employees at the Leitchfield facility who had the same number and type of performance infractions as him and were not terminated, nor is he aware of employees who had four write-ups within a year and were not terminated [DN 23-1 at 12].

Bel Brands also argues that Mr. Pawley was not replaced by a younger employee. [DN 20 at 22]. When considering whether an employer replaced an individual with a significantly younger employee, context may matter. *See Alberty v. Columbus Twp.*, 730 F. App'x. 352, 366 n.2 (6th Cir. 2018). In *Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 772 (6th Cir. 2014), a plaintiff was not able to show that his employer replaced him with a younger worker because the employer requested temporary workers from an outside company to fill certain positions, and the plaintiff offered no evidence that his employer requested young workers or played any role in choosing the workers the agency provided. Like in *Snyder*, Bel Brands assigned Mr. Pawley's duties to a temporary staffing agency that supplied a temporary contract worker to do the work. [DN 23-1 at 12–13]. Mr. Pawley presents no evidence that Bel Brands requested a young worker or had any role in who was selected. Thus, Mr. Pawley cannot prove he was replaced by a significantly younger person. As such, Mr. Pawley cannot prove the fourth element of the prima facie case.

### 2. Legitimate, Nondiscriminatory Reason

Even if Mr. Pawley could prove his prima facie case, Bel Brands argues that it terminated Mr. Pawley per its progressive discipline policy, which is a legitimate nondiscriminatory reason. [DN 20 at 20]; *see e.g., Mings v. Wal-Mart Stores, Inc.*, No. 1:14-CV-00086-GNS, 2015 WL 4068280, at *5 (W.D. Ky. Jul. 2, 2015) (holding that an employer articulated a legitimate, nondiscriminatory reason for an employee's termination because the employee received four write-ups in a twelve-month period). Bel Brands' employee handbook explains its progressive discipline policy—the policy articulates that when an employee reaches four disciplinary infractions within a year that is grounds for termination. [DN 23-1 at 3–4]. Mr. Pawley received and reviewed a copy of the Employee Handbook. [*Id.* at 2]. Mr. Pawley does not dispute that he received four infractions between December 2015 and May 2016. [*Id.* at 7–10]. Bel Brands has articulated a legitimate, nondiscriminatory reason.

### 3. Pretext

Mr. Pawley must show that Bel Brands' articulated reason is only a pretext for age discrimination. A plaintiff can prove pretext by showing that the defendant's reason (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Wexler*, 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Mr. Pawley cannot show that Bel Brands' reason had no basis in fact. Showing that the employer's proffered reason had no basis in fact "implicates evidence that the proffered bases for the plaintiff's discharge never happened." *Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 405–06 (6th Cir. 2014) (citation and internal quotation marks omitted). Here, Mr. Pawley does not contest that he received the four write-ups that led to his termination. [DN 23-1 at 10].

Mr. Pawley also cannot show that Bel Brands' reason for his termination did not actually motivate its conduct. The Sixth Circuit "has held that the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler*, 317 F. 3d at 577. "A plaintiff using the second option 'admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal,' but 'attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Here, Mr. Pawley admits the factual basis underlying Bel Brands' proffered explanation—that he received four performance infractions within twelve months. [DN 23-1 at 7–10]. Mr. Pawley admits that when he received his fourth write-up, he knew that it meant termination under the progressive discipline policy. [DN 23-1 at 11–12]. Mr. Pawley argues that each of the infractions were not warranted because it was just pretext. [DN 23-1 at 11–12]. Regarding the December 2015 infraction, Mr. Pawley admits that as far as he knew his supervisor believed that he did not pull enough product. [DN 20-4 Pl. 77:6–9]. With the mid-April 2016 infraction, Mr. Pawley does not deny that he failed to place pulled supplies into the staging area. [DN 20-4 Pl. 78:22–79:25]. With the three-day suspension, Mr. Pawley admits that he did not notate the missing cage bolt on his Daily Operator Checklist. [DN 23-1 at 8]. With his final infraction before termination, Mr. Pawley does not dispute that he failed to properly stage the whey powder for production. [*Id.* at 10].

Additionally, Mr. Inman's alleged offensive remarks about Mr. Pawley's age are immaterial here. [DN 23 at 14–15]. "In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of age discrimination." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998). The Court "must also examine the substance of the discriminatory remarks" to determine their relevance. *Id.* at 355. "Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* And "when assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation." *Id.* at 356.

Even if Mr. Inman made the alleged comments, they were isolated comments. Mr. Inman also did not decide to terminate Mr. Pawley. In fact, Mr. Myers made the decision to terminate Mr. Pawley, even though Mr. Inman asked that Mr. Pawley be given another chance. [DN 23-1 at 10–11]. Thus, Mr. Pawley cannot show that the reason for his termination did not actually motivate Bel Brands' decision to terminate him.

Finally, Mr. Pawley cannot show that Bel Brands' reason for his termination was insufficient to warrant the challenged conduct. This category "consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Flones*, 567 F. App'x. at 406 (citation and internal quotation marks omitted). This third category "is a direct attack on the credibility of the employer's proffered motivation for disciplining the plaintiff and, if shown, permits but does not require, the factfinder

to infer illegal discrimination from the plaintiff's prima facie case." *Id.* (citation and internal quotation marks omitted). "In other words, it creates a genuine, triable issue of material fact." *Id.* (citation and internal quotation marks omitted).

Here, Mr. Pawley provides no evidence that younger employees—employees outside the protected class—were not disciplined even though they engaged in substantially similar identical conduct. Mr. Pawley argues that he was treated less favorably than other employees when he was written up in a group or when a similarly-situated employee who committed the same alleged offense was not written up. [DN 23 at 14]. Mr. Pawley offers no evidence about the age of these other employees or even their disciplinary history. He also is not aware of employees that had four similar infractions within a year and were not terminated. [DN 23-1 at 12]. Because Mr. Pawley cannot show pretext under the third category, Bel Brands is entitled to judgment as a matter of law on Mr. Pawley's age discrimination claim.

### D. Hostile Work Environment

#### 1. Hostile Work Environment based on Disability Discrimination

"Kentucky law does not recognize independent claims of hostile work environment. . . they are actionable only through the KCRA." *Suchanek v. Univ. of Kentucky*, No. 3: 10-19-DCR, 2011 WL 3045986, at *9 (E.D. Ky. July 25, 2011) (citations omitted). A KCRA claim relying on a theory of hostile working environment would require the plaintiff to show that he is a member of a protected class. *Id.* Because Mr. Pawley is not legally disabled under the KCRA, he is not a member of a protected class for purposes of a hostile work environment claim based on disability discrimination.

## 2. Hostile Work Environment based on Age Discrimination

Under the KCRA, hostile work environment claims for age discrimination are "analyzed in the same manner" as claims under the ADEA. *Highlands Hosp. Corp.*, 545 F.3d at 393. To establish a prima facie case for a hostile work environment based on age, a plaintiff must prove: (1) he was at least 40 years old; (2) he was subjected to harassment based on age; (3) the harassment unreasonably interfered with the employee's work performance and created an objectively intimidating, hostile, or offensive work environment; and (4) there is a basis for employer liability. *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). "Whether an environment is hostile or abusive is determined by looking at all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hale v. ABF Freight Sys.*, 503 F. App'x 323, 337 (6th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In *Snyder*, the plaintiff alleged a hostile work environment claim under the ADEA. The relevant issue was whether the plaintiff could satisfy the third element of a hostile work environment claim. 589 F. App'x at 773. The plaintiff's supervisor made age-related comments such as calling the plaintiff "old man," remarking that the plaintiff was "too slow," and calling him "too old." *Id.* at 769. The court held that "no reasonable jury could find that Snyder's work environment was objectively hostile" because the age-related derogatory comments toward the plaintiff were not sufficiently severe or pervasive to create an objectively hostile work environment. *Id.* at 773. The court reasoned that "[l]anguage and conduct that are 'merely offensive' are insufficient to support a hostile-work-environment claim." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Here, Mr. Pawley alleges that Mr. Inman, used language such as "old man" and "feeble." [DN 23 at 16]. Like in *Snyder*, merely offensive language is insufficient to support a hostile work environment claim based on age. The comments do not appear to have interfered with Mr. Pawley's work performance because in his deposition when asked about if it ever got to the point where he felt like he could not go to work anymore, Mr. Pawley said, "Well, no because I had a family to support." [DN 20-4 Pl. 124:9–11]. Mr. Pawley argues that Mr. Inman would pull him away from work to allegedly harass other employees. [DN 23 at 17–18]. But the evidence of the alleged harassment that Mr. Pawley himself experienced does not show that it interfered with his work performance. Not only did Mr. Inman's comments not unreasonably interfere with Mr. Pawley's work performance, they also did not create an objectively hostile work environment. Considering the totality of the circumstances, no reasonable jury could find that Mr. Pawley experienced a hostile work environment.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 20] is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

October 2, 2019

19